IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANET M. FRALIN | : | CIVIL ACTION |
| | : | No. 06-2421 |
| v. | : | |
| | : | |
| C AND D SECURITY, INC. A/K/A | : | |
| C AND D SECURITY | : | |

O'NEILL, J.                                                             MAY 30, 2007

## MEMORANDUM

Plaintiff Janet Fralin filed this complaint against C & D Security on June 8, 2006, alleging violations of Title VII, the Americans with Disabilities Act, and state law. Fralin alleges that C & D's treatment of her from June 2004 to September 13, 2004 was the result of race discrimination, gender discrimination, and willful violations of the ADA. Before me now are defendant's motion to dismiss, plaintiff's response, and defendant's reply thereto.

## BACKGROUND

C & D provides security services for private and governmental entities. Fralin, an African American female, applied for a security officer position with C & D in October 2002. In her application, Fralin specified that she was available to work Monday through Friday, 8 a.m. to 4 p.m. She also indicated that she was available to work twelve hour shifts "sometimes" and was not available to work weekends, nonstandard hours, or split shifts. Fralin further disclosed that she suffered from a pre-existing stress-related disability.

C & D offered Fralin the job and she worked day shifts, 5:30 a.m. to 1:00 p.m., for nearly ten months. C & D provided Fralin with an employment manual when she was first hired. In the manual's General Policy Statement, defendant guarantees all employees: (1) courtesy, dignity

1

and consideration; (2) fair wages, job opportunities and training; and (3) application of employment policies in a fair, uniform and consistent manner in accordance with its equal employment opportunity and affirmative action policies. The manual also guaranteed a nondiscriminatory employee selection process.

On June 1, 2004, Fralin was advised that her shift was no longer available. She was then assigned to three consecutive twelve hour shifts from Monday through Wednesday beginning on June 7, 2004. According to the complaint, C & D changed Fralin's shift to accommodate new hires who were predominately male and Caucasian.

Fralin immediately advised C & D that she could not work three consecutive twelve hour shifts based on her stress/anxiety disability and her commitment to care for a grandchild after work. She also told C & D that, due to her disability, she could not work back to back twelve hour shifts. She was still capable of working a normal day shift with "occasional" overtime and provided management with alternative proposals for shifts she could work. Fralin provided C & D with medical documentation concerning her impairment.

C & D then allegedly proposed three shifts, one of which Fralin found acceptable. C & D, however, decided that Fralin had rejected all three shifts. Fralin then was put on "will call" status. While on will call, Fralin learned that other shifts had become available but were given to others who were not disabled, not African American, and not female. Fralin was never offered a shift while on will call.

On August 26, 2004, C & D denied Fralin's request for an accommodation of her disability. In denying the accommodation, C & D cited Fralin's child care responsibilities as evidence supporting her ability to work overtime. On that date, C & D also issued a directive

2

demanding that Fralin begin a regular shift assignment working the graveyard shift from Sunday through Thursday. Fralin did not accept the shift and was terminated on September 13, 2004.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). In ruling on a 12(b)(6) motion, I must accept as true all well-pleaded allegations of fact, and any reasonable inferences that may be drawn therefrom, in plaintiff's complaint and must determine whether "under any reasonable reading of the pleadings, plaintiffs may be entitled to relief." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (citations omitted). Nevertheless, in evaluating plaintiff's pleadings I will not credit any "bald assertions." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997). Nor will I accept as true legal conclusions or unwarranted factual inferences. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "The complaint will be deemed to have alleged sufficient facts if it adequately put the defendant on notice of the essential elements of the plaintiff's cause of action." Nami, 82 F.3d at 65. A Rule 12(b)(6) motion is proper only if the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. Employment discrimination complaints are not subject to a high pleading standard; the complaint need only "a short and plain statement of the claim showing that the pleader is entitled to relief." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002).

## DISCUSSION

C & D has moved to dismiss Fralin's gender discrimination claim, ADA claim, and state law claims but not her race discrimination claim.

3

A.   Gender Discrimination

C & D first argues that Fralin's gender-based discrimination claim should be dismissed as "child rearing," which is not protected under Title VII of the Civil Rights Act of 1964. Fralin seems to respond by noting that C & D's refusal to accommodate her child care responsibilities is only evidence of C & D's discriminatory animus towards her as an African American female. She also notes that further discovery will confirm that C & D accommodated a single father with similar child care responsibilities. I agree with plaintiff.

First, Fralin cannot recover for "child rearing" discrimination. Under Title VII it is unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin. Weston v. Commonwealth of Pennsylvania, 251 F.3d 420, 425 (3d Cir. 2001), citing 42 U.S.C. § 2000e-2(a)(1). Child care does not fall under Title VII; it is a gender-neutral trait. See Guglietta v. Meredith Corp., 301 F. Supp. 2d 208, 214 (D. Conn 2004). "A disservice is done to both men and women to assume that child-rearing is a function particular to one sex." Id., quoting Record v. Mill Neck Manor Lutheran Sch., 611 F. Supp. 905, 907 (E.D.N.Y. 1985).

Fralin has, however, stated a claim for gender discrimination. In her complaint, she argues that she was treated differently from male C & D employees. Her complaint specifies that: (1) C & D changed her shift to accommodate predominately male employees; (2) a Caucasian male with less experience was hired and promoted before her; (3) overtime shifts were made available to male officers before her; and (4) C & D accommodated several males with day shifts. She also notes that C & D changes the schedules of its minority and female employees

4

while giving Caucasian and male employees preferential shifts and schedules. These allegations satisfy the requirements of Rule 12(b)(6); the complaint adequately put the defendant on notice of the essential elements of the plaintiff's cause of action. Therefore, I will not dismiss the claim of gender discrimination.

B. ADA Claim

C & D also argues that Fralin's ADA claim is barred by the statute of limitations. The Americans with Disabilities Act prohibits discrimination against qualified individuals with a disability. In Pennsylvania, charges of disability discrimination must be filed with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e)(I); Grosset v. Waste Mgm't, 2001 WL 25649 (E.D. Pa. Jan. 5, 2001). According to the complaint, Fralin's request for accommodation was denied on August 24, 2006 and she was terminated on September 13, 2004. Fralin filed her charge of discrimination with the EEOC on June 22, 2005, 302 days after C & D denied her request for accommodation but less than 300 days after her termination.

In her response, Fralin first argues that the statute of limitations should run from the date of her termination, not the date that her accommodation was denied. She cites National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), to support her argument. In that case, the Supreme Court explained:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed with the 180- or 300-day period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges

5

addressing those acts are themselves timely filed.

Id. at 113. Courts analyzing the issue, however, have held that "where a termination was merely a subsequent effect of an alleged earlier discriminatory action, it does not extend the limitations period." Sessa v. Sears Roebuck & Co., 2004 WL 2203743, at *3 (E.D. Pa. Sept. 30, 2004); see also Seery v. Biogen, Inc., 195 F. Supp. 2d 347, 353 (D. Mass. 2002) (measuring from date of denial of ADA accommodation, not subsequent termination); Colon Quiles v. Am. Airlines, 133 F. Supp. 2d 151, 157-8 (D.P.R. 2001) (same). In this case, Fralin's termination was a subsequent effect of the denial of her ADA accommodation. At that point, because C & D would not accommodate Fralin's disability or offer her a shift that was acceptable to her she was effectively terminated. She did not have another shift with C & D before her official termination on September 13, 2004. Therefore, the statute of limitations began to run when C & D denied Fralin's request for termination and her EEOC claim was not timely filed.

Fralin next argues that she has timely pled her ADA claim because she did not receive notice of C & D's denial of her request for accommodation until August 30, 2004. I cannot consider this additional information, however, because it was not contained in the complaint. See Giusto v. Ashland Chemical Co., 994 F. Supp. 587, 594 (E.D. Pa. 1998) ("In ruling on a motion to dismiss on statute of limitations grounds, the Court may not look beyond the face of the complaint."). The complaint specifies that C & D refused to accommodate Fralin on August 26, 2004, and that is the date I must use for my analysis on this motion.[1]

---

[1] C & D also argues that Fralin's complaint should be dismissed because she has failed to allege that she is "disabled" within the meaning of the ABA. Because I find that, as pled, Fralin's ADA claim is barred by the statute of limitations, I do not reach this issue. I will note, however, that the ADA only protects qualified individuals with a "disability." The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more of the

C.   Breach of Contract

C & D next argues that Fralin has failed to state a claim for breach of contract. The contract at issue is C & D's employee manual.

Under Pennsylvania law there is a presumption that all employment is at-will; employees may be discharged for any reason at any time. Luteran v. Loral Fairchild Corp., 688 A.2d 211, 214 (Pa. Super. 1997).

> An employment handbook constitutes a contract enforceable against an employer if a reasonable person in the employee's position would interpret its provisions as illustrating the employer's intent to overcome the at-will rule and be legally bound by the representations contained in the book. The handbook must clearly indicate that the employer meant to supplant the at-will rule. This is because an employee handbook or manual only forms the basis of an implied contract if the employee shows that the employer affirmatively intended that it do so. The mere fact that the employer distributed the handbook, or that the employee believed the handbook was legally binding cannot give rise to the presumption that an employer intended to be legally bound.

Hartman v. Sterling, Inc., 2003 WL 22358548, at *13 (E.D. Pa. Sept. 10, 2003) (citations and quotations omitted).

Fralin has met her burden stated a claim for breach of contract. In her complaint, she asserts that C & D provided her with an employment manual that guaranteed certain employment protections. According to the plaintiff, she was not an "at will" employee and C & D could only terminate probationary employees but not full employees with or without cause. The allegations

---

major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Further, many courts have found that the inability to work certain hours does not constitute a substantial life impairment. See Ellis v. Mohenis Servs. Inc., 1998 WL 564478, at *4 (E.D. Pa. Aug. 24, 1998) (ability to only work forty hours per week not substantial impairment; see also Roth v. Lutheran Gen. Hosp., 57 F.3d 1446, 1454-55 (7th Cir. 1995) (visual condition which prevented plaintiff from working shifts longer than ten hours or being on call was not a disability under ADA).

in the complaint adequately put the defendant on notice of the essential elements of the plaintiff's cause of action. I will therefore deny C & D's motion to dismiss without prejudice to its renewal as a motion for summary judgment with the employee manual attached.

D.   Wrongful Discharge

The fourth count of Fralin's complaint sets out a wrongful discharge claim. In that count, she asserts that she was terminated due to her disability, race, and/or gender without legal cause in violation of the public policy of the Commonwealth of Pennsylvania. C & D argues that this claim should be dismissed because it is preempted by the Pennsylvania Human Relations Act (PHRA). I agree.

"It is well-settled that courts will not entertain a separate common law action for wrongful discharge where specific remedies are available." Jacques v. AKZO Int'l Salt, Inc., 619 A.2d 748, 752 (Pa. Super. Ct. 1993), citing Clay v. Advanced Computer Applications, 559 A.2d 917, 918 (Pa. 1989). The PHRA "provides a statutory remedy that precludes assertion of a common law tort action for wrongful discharge based upon discrimination." Id. Because of this statutory remedy, Fralin's common law wrongful discharge claim cannot proceed.

E.   Attorneys Fees

C & D also requests that I strike Fralin's demand for attorneys' fees from Count III, her breach of contract claim. I agree. The Pennsylvania Supreme Court has held that "there can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established exception." Merlino v. Delaware County, 728 A.2d 949, 951 (Pa. 1999). No exception applies in this breach of contract case so Fralin's demand for attorneys' fees in Count III will be stricken.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANET M. FRALIN | : | CIVIL ACTION |
| | : | No. 06-2421 |
| v. | : | |
| | : | |
| C AND D SECURITY, INC. A/K/A | : | |
| C AND D SECURITY | : | |

## ORDER

AND NOW, this 30 day of May 2007, upon consideration of defendant's motion to dismiss, plaintiff's response, and defendant's reply thereto, defendants' motion to dismiss is GRANTED in part and DENIED in part. Defendant's motion to dismiss is GRANTED as to plaintiff's Americans with Disabilities Act claim, wrongful discharge claim, and request for attorneys' fees in Count III. The defendant's motion to dismiss plaintiff's breach of contract is DENIED without prejudice to its renewal as a motion for summary judgment. The defendant's motion to dismiss is DENIED as to all other claims.

_____
THOMAS N. O'NEILL, JR., J.